# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 06 C 3950 |
| TEKNEK, LLC, | ) | |
| | ) | Honorable Joan B. Gottschall |
| Debtor. | ) | |

## MEMORANDUM OPINION AND ORDER

Currently before the court is an appeal by Sheila Hamilton ("Hamilton") from an order entered by the United States Bankruptcy Court for the Northern District of Illinois holding her in contempt for failing to produce discovery materials requested pursuant to a subpoena. For the following reasons, the bankruptcy court's ruling is affirmed.

## BACKGROUND

In 1999, Systems Division, Inc. ("SDI") sued Teknek, LLC ("Teknek," "Debtor") in the United States District Court for the Central District of California. The suit alleged that Teknek had infringed three of SDI's patents. A jury found in SDI's favor and in August 2004, SDI was awarded a $3 million judgment.

In July 2005, Teknek filed a voluntary petition for Chapter 7 relief in the United States Bankruptcy Court for the Northern District of Illinois. The petition listed the $3 million judgment as part of Teknek's liabilities. Hamilton, who is an officer and part owner of Teknek, was appointed as Teknek's representative for purposes of the bankruptcy proceedings. After the proceedings were underway, SDI alleged that Teknek, Hamilton, and others were engaging in tactics designed to thwart SDI's ability to collect on its judgment. SDI thus moved the bankruptcy court for leave to conduct an examination of Hamilton and other individuals pursuant to Rule 2004 of the Federal

Rules of Bankruptcy Procedure.[1] The bankruptcy court granted the motion and on October 3, 2005, SDI issued a subpoena pursuant to Rule 2004 for Hamilton's examination. The subpoena included requests for various kinds of documents; for present purposes, the only relevant materials are those sought in paragraph five:

> All financial statements, including disbursement journals, balance sheets, profits and loss statements, accounts receivable, accounts payable, receipts journals and operating statements, including specific information as to name, address, contact person and phone number for each vendor, creditor or customer, as well as copies of any electronic media containing accounting or financial data, in relation to the Debtor, its parents, subsidiaries, or Affiliates.

Subpoena as to Sheila Hamilton, Debtor's Representative, Schedule A ¶ 5, Appellee's Ex. C.

Teknek produced documents in response to the subpoena on October 31, 2005, and Hamilton's examination took place on the following day. It soon became apparent that the information regarding vendor and customer names requested in paragraph five was not included in Teknek's production. SDI insisted that the information was essential because without it, SDI would be unable to decipher other discovery materials produced by Teknek, which refer to customers and vendors only by code number. After further requests by SDI, Teknek stated that it had no such

---

[1] Rule 2004 provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). With respect to the production of documents, the rule further provides:

> The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial. As an officer of the court, an attorney may issue and sign a subpoena on behalf of the court for the district in which the examination is to be held if the attorney is admitted to practice in that court or in the court in which the case is pending.

Fed. R. Bankr. P. 2004(c).

documents. According to Teknek, the vendor and customer information was owned by Teknek Electronics, Ltd. Teknek had been given access to the information only by virtue of a license agreement. The agreement was revoked by Teknek Electronics in May 2004. As a result, Teknek claimed, it no longer had access to the information.

SDI filed a motion pursuant to 11 U.S.C. § 105 and Bankruptcy Rules 9020 and 9014 seeking an order holding Teknek and Hamilton in contempt of court for failing to comply with the subpoena. Hearings on the motion were held on January 30, 2006 and February 21, 2006. Although the bankruptcy court declined to hold Teknek and Hamilton in contempt based on several of the other grounds urged by SDI, the court ultimately held Hamilton personally in contempt for failing to produce the customer and vendor information. *In re Teknek, LLC*, No. 05 B 27545, slip op. at 16 (Bankr. N.D. Ill. May 25, 2006). The court also imposed a fine on Hamilton of $1,000 for every day she failed to comply with the subpoena. *Id.* Hamilton later filed a motion to reconsider, which the bankruptcy court denied. *In re Teknek, LLC*, No. 05 B 27545, 2006 WL 2136046, at *7 (Bankr. N.D. Ill. June 30, 2006).

Hamilton appealed the bankruptcy court's order to this court pursuant to 28 U.S.C. § 158(a)(1). Instead of filing a response brief, SDI initially moved to dismiss the appeal, arguing that because the exact amount of the sanction had yet to be determined, the bankruptcy court's order was not final and thus was not subject to appellate review. The court denied the motion to dismiss. *See* Minute Order, 10/26/2006. When SDI subsequently filed a response brief, Hamilton moved to strike, contending that the response was both untimely and failed properly to cite the record as required under the Bankruptcy Rules. In response, SDI filed a motion to supplement the record. Thus, in addition to the appeal itself, a motion to strike and a motion to supplement are also pending

on the docket. All of these motions and issues are addressed in what follows.

## DISCUSSION

**I.      Motion to Strike**

Before reaching the merits of the parties' arguments concerning the bankruptcy court's contempt order, the court first must address Hamilton's motion to strike SDI's response brief. Hamilton argues that the response should be stricken on two grounds. First, she argues that SDI has failed to comply with Bankruptcy Rule 8010, which requires briefs on appeal to include, among other things, "a statement of the facts relevant to the issues presented for review, with appropriate references to the record." Fed. R. Bankr. P. 8010. Hamilton argues that SDI's brief fails to provide proper citations to the record and cites documents that are not part of the record. In addition, Hamilton argues that SDI's response should be stricken because it was not timely filed.

A district court has broad discretion to grant or deny a motion to strike. *Vazquez v. Central States Joint Bd.*, No. 04 C 861, 04 C 1798, 2006 WL 695563, at *4 (N.D. Ill. Mar. 15, 2006) (citing *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664-65 (7th Cir. 1992.)). As a general matter, however, motions to strike are disfavored. *See Devore Family P'ship, LLP v. McDougal Littell*, No. 06 C 3484, 2006 WL 2861116, at *2 (N.D. Ill. Sept. 26, 2006) (citing *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)); *see also In re Midway Airlines, Inc.*, 175 B.R. 239, 242 (Bankr. N.D. Ill. 1994) (noting that Federal Rule of Civil Procedure 12(h) applies in adversary proceedings through Federal Rule of Bankruptcy Procedure 7012(b)). Under the circumstances present here, the court concludes that SDI's brief should not be stricken.

With respect to SDI's failure to comply with Rule 8010, the court agrees that SDI's citation to the record is not as complete as might be desired. SDI's failures in this respect, however, are

ultimately insignificant. Hamilton takes particular issue with two statements appearing in SDI's brief for which no citation to the record is provided: first, SDI's assertion that "Hamilton appeared at her Rule 2004 examination, during which she testified that she had access to all the Teknek entities' documents and records from computer terminals located at Teknek Holding's Scotland headquarters," Appellee's Br. at 3; and second, SDI's statement that "Hamilton, through her own testimony, admitted that the business records of the Debtor, Teknek, and its related entities were accessible by her in her capacity as owner of Teknek Holdings." *Id.* at 8. Although SDI does not provide a citation to the record for the latter statements, it provides a citation for the essentially equivalent assertion that "SDI provided the Bankruptcy Court with evidence in the form of Hamilton's own deposition testimony that Hamilton unequivocally possesses or is in control of the requested information in her capacity as owner of the company that is now in possession of the customer information." *Id.*

Hamilton further objects that the document to which SDI cites in connection with the latter statement—Hamilton's deposition—is not part of the record on appeal. However, SDI subsequently moved the court to supplement the record with Hamilton's deposition; the court now grants that motion. *Cf. Dickerson v. State of Alabama*, 667 F.2d 1364, 1367 (11th Cir. 1982) ("While federal appellate courts do not often supplement the record on appeal with evidence not reviewed by the court below, it is clear that the authority to do so exists. Whether an appellate record should be supplemented under the particular circumstances of a case is a matter left to the discretion of the federal courts of appeals.") (citing *Erkins v. Bryan*, 663 F.2d 1048, 1052 n.1 (11th Cir. 1981); *United States v. Aulet*, 618 F.2d 182, 187 (2d Cir. 1980); *Turk v. United States*, 429 F.2d 1327, 1329 (8th Cir. 1970); and *Gatewood v. United States*, 209 F.2d 789, 792-93 (D.C. Cir.1953)). Accordingly,

the court declines to strike SDI's brief due to any improprieties in SDI's manner of citation.[2]

The court also rejects Hamilton's contention that SDI's brief should be stricken for untimeliness. Hamilton argues that according to the terms of the briefing schedule entered by the court on July 31, 2006, SDI's response brief was due on September 15, 2006. As noted above, however, instead of filing a response brief, SDI opted to file a motion to dismiss Hamilton's appeal for lack of jurisdiction. It was only after the motion to dismiss was denied that SDI filed a response brief, twenty-one days later, on November 17, 2006.

This question is a somewhat closer one, especially in light of the fact that SDI did not seek leave from the court to extend the date on which its response brief was due. Nevertheless, the court concludes that striking SDI's response is not warranted. First, SDI had a good faith basis for filing its motion to dismiss. Although the motion was denied, SDI had legitimate grounds for thinking that a response brief might not be necessary. Second, while SDI did not file its response by the date indicated in the original briefing schedule, it filed its response within twenty-one days after the court's ruling on the motion to dismiss. This clearly indicates an attempt by SDI to adhere to the original briefing schedule, under which SDI was given twenty-one days from the filing of the appellant's brief to file its response brief.

---

[2] Courts are generally reluctant to dismiss an appeal for failure to comply with Rule 8010. *See, e.g.*, *Matter of Gulph Woods Corp.*, 189 B.R. 320, 323 (E.D. Pa. 1995) ("This court has not found any cases in which an appeal was dismissed for failure to comply with Bankruptcy Rule 8010."); *see also In re Stephenson,* Nos. 96 CIV. B. 557 (DC), 96 CIV. 558 (DC), 1996 WL 403087, at *1 (S.D.N.Y. July 18, 1996) (declining to dismiss appeal for failure to comply with Rule 8010 since appeal was without merit); *In re Kernick*, Nos. 88-4196-R, 86-41512-7, 1991 WL 33135, at *2 (D. Kan. Feb. 12, 1991) (although appellant's brief failed to comply with Rule 8010(a)(1), no punitive action was necessary since the court understood the matters presented). Indeed, even the one case cited by Hamilton in support of her motion to strike, *In re Stotler and Co.*, 166 B.R. 114 (N.D. Ill. 1994), went on to address the merits of the appeal after noting that the appeal failed due to its lack of compliance with Rule 8010. *Id.* at 117.

The court is acutely aware that, given the per diem sanctions to which Hamilton is subject, any delay in the disposition of this matter is costly to her.[3] On the other hand, as SDI points out, Hamilton's counsel was given leave shortly after the filing of the appeal to extend the briefing schedule by twenty days due to a pre-planned family vacation and the need to attend to another appeal before the Ninth Circuit. *See* Agreed Routine Mot. Extension Time and Set Briefing Schedule ¶¶ 5, 6. Additionally, Hamilton extended the briefing on SDI's motion to dismiss by filing a sur-reply, which in turn triggered a sur-reply by SDI. Hamilton's motion to strike, and the subsequent briefing it entailed, has also prevented the court from addressing the appeal as expeditiously as might otherwise have been the case. It is precisely for such reasons that motions to strike are disfavored. *See, e.g.*, *In re S.M. Acquisition Co.*, No. 05 C 7076, 2006 WL 2290990, at *4 (N.D. Ill. Aug. 7, 2006) ("Motions to strike affirmative defenses are generally disfavored because of their potential to delay proceedings.") (citing *United States v. 416.81 Acres of Land*, 514 F.2d 627, 631 (7th Cir. 1975)). In short, both parties have caused some delay in the proceedings on appeal.

The court emphasizes that SDI acted rashly in failing to seek formal leave of the court to

---

[3] Indeed, the court notes "[a] civil contempt order that starts out as coercive can become punitive and therefore criminal." *In re Grand Jury Proceedings*, 280 F.3d 1103, 1109 (7th Cir. 2002) (citing *In re Grand Jury Proceedings of December*, 1989, 903 F.2d 1167, 1170 (7th Cir. 1990)). Neither of the parties has raised the issue of whether the per diem fine imposed on Hamilton has accrued to such an extent that it has lost its coercive character as a civil sanction (which the bankruptcy court clearly intended it to be) and has effectively become a punitive criminal sanction. Accordingly, the court does not address the question here, except to take note of the Seventh Circuit's observation that "[i]n the absence of unusual circumstances, a reviewing court should be reluctant to conclude . . . that a civil contempt sanction has lost its coercive impact at some point prior to the eighteen-month period prescribed as a maximum by Congress [in 28 U.S.C. § 1826]." *Id.* (quoting *In re Grand Jury Proceedings of December*, 1989, 903 F.2d 1167, 1170 (7th Cir. 1990)) (internal quotation marks omitted).

depart from the arranged briefing schedule. Under the circumstances, however, the court concludes that SDI's brief should not be stricken. Accordingly, Hamilton's motion to strike is denied.

## II.     The Bankruptcy Court's Finding of Contempt

Having considered the necessary preliminary issues, the court turns to a consideration of the issues raised in Hamilton's appeal. Hamilton contends that the bankruptcy court's contempt order should be reversed for two reasons. First, she argues that the bankruptcy court lacked personal jurisdiction over her; second, she argues that the bankruptcy court's contempt order was not supported by the evidence. The court examines these issues in turn.[4]

---

[4] By way of background, it should be noted that many of the issues Hamilton raised before the bankruptcy court are not raised in her appeal. In particular, much of the argument before the bankruptcy court centered on questions concerning the extent of Hamilton's obligations under the subpoena. For example, in its briefing on SDI's motion for a contempt order, Teknek claimed that it had no access to the customer and vendor information in question because the license agreement pursuant to which it once had access to the information had since been revoked. In response, SDI argued that Teknek could be deemed to have had access to the information by virtue of *Hamilton's* access to the information. Hamilton had access to the information, SDI further contended, because she was an interest holder and officer both of Teknek and the Teknek entity that had licensed the customer and vendor information to Teknek. The bankruptcy court reasoned that accepting SDI's position would ultimately require some form of veil-piercing. Instead of taking that more complicated approach, the bankruptcy court concluded that it could simply require Hamilton herself to turn over the information under 11 U.S.C. § 542(e), which provides: "Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, *or other person that holds recorded information*, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee." (emphasis added). The bankruptcy court thus held Hamilton in contempt, but not Teknek. In her appeal, Hamilton does not dispute the bankruptcy court's authority under section 542 to require her to produce the documents in question. Instead, Hamilton disputes only the bankruptcy court's finding that she was able to comply with the order but failed to do so.

Similarly, much of the bankruptcy court's analysis in its ruling on Hamilton's motion to reconsider is devoted to Hamilton's argument that the subpoena merely required her to produce documents to which she had access *qua* Teknek official and not documents to which she might have access in her individual or personal capacity. The bankruptcy court rejected Hamilton's position, reasoning that subpoenas are generally directed to persons irrespective matter of whether they are parties to a particular proceeding. *In re Teknek, LLC*, No. 05 B 27545, 2006

-8-

### A. Standard of Review

When a party appeals a bankruptcy court's order, the district court reviews factual determinations under a clearly erroneous standard and legal determinations de novo. *Tekena USA, LLC v. Fisher*, Nos. 06 C 1558, 06 C 2408, 2006 WL 2536631, at *4 (N.D. Ill. Aug. 31, 2006) (citing *Hoseman v. Weinschneider*, 322 F.3d 468, 473 (7th Cir. 2003)). A finding of fact is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Hawk*, 434 F.3d 959, 962 (7th Cir. 2006) (internal quotation marks omitted). De novo review requires the court to undertake an independent examination of the bankruptcy court's judgment without giving deference to that court's analysis or conclusions. *Tekena*, 2006 WL 2536631, at *4.

---

WL 2136046, at *4 (Bankr. N.D. Ill. June 30, 2006). As the bankruptcy court put it:
> [A]s long as a subpoena is addressed to a specific person who would have sufficient control and power to physically produce specified documents in the event that such a person desired to do so, the person must comply with the subpoena; there is no capacity defense to a subpoena that requires the party serving it to speculate as to which hat the compelled person must garnish in order to conjure up the ability and power to produce certain documents and information.

*Id.* at *7 (Bankr. N.D. Ill. June 30, 2006). Hamilton countered by attempting to invoke an exception under Rule 45 of the Federal Rules of Civil Procedure providing that a subpoena shall be quashed if it "requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person." Fed. R. Civ. P. 45(c)(3)(A)(ii). Hamilton claimed that if the subpoena were issued to her in her personal capacity, she would be exempt from having to comply with it because it would require her to travel more than 100 miles from where she resides. The bankruptcy court explained that the latter exception applies only to persons who are "not parties or officers of parties," and thus does not cover Hamilton, who plainly *is* an officer of a party (*viz.*, Teknek). *In re Teknek*, 2006 WL 2136046, at *9. Although in her appeal Hamilton briefly attempts to distinguish a case cited as part of the bankruptcy court's analysis, *Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 416 (10th Cir. 1996), she offers no challenge to the bankruptcy court's overall holding regarding her obligations pursuant to the subpoena. Instead, Hamilton's arguments are again directed to the bankruptcy court's finding regarding her *ability* to comply with the subpoena.

-9-

### B. Personal Jurisdiction

Hamilton first argues that the bankruptcy court lacked personal jurisdiction over her and thus did not have the power to hold her in contempt. Specifically, Hamilton argues that while SDI served a copy of its contempt motion on Teknek's counsel in the United States, the motion was never personally served on Hamilton (who resides in Scotland). The bankruptcy court rejected this argument because Hamilton had raised it for the first time only in her motion to reconsider. The court agrees that the bankruptcy court was justified in refusing to consider Hamilton's belated challenge to the court's personal jurisdiction. Although Teknek's brief in response to SDI's motion for contempt stated that the court lacked jurisdiction over Hamilton, the contention was raised only in passing and was so undeveloped that it could properly have been deemed waived. *See, e.g.*, *Thompson v. Boggs*, 33 F.3d 847, 854 (7th Cir. 1994) ("[Plaintiff] has failed to develop his argument or cite any legal authority, thus, under our Circuit's precedent, the argument is waived."); *First Indiana Bank v. Baker*, 957 F.2d 506, 508 (7th Cir. 1992) (appellant waived issue because he failed to cite any pertinent authority for his argument); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."). Indeed, in her appeal, Hamilton herself does not take issue with the bankruptcy court's determination that she failed to raise the issue in opposing SDI's motion for contempt; nor does she offer any reasons why this court should consider the issue in light of the bankruptcy court's refusal to do so. Under these circumstances, the court declines to reverse the bankruptcy court's contempt order on the ground

that the bankruptcy court lacks personal jurisdiction over Hamilton.[5]

### C. Contempt

As already indicated, the basis for the bankruptcy court's contempt order was its finding that Hamilton had withheld vendor and customer information that she was required to turn over pursuant to SDI's subpoena. Hamilton claimed that she did not have possession of or control over the information because the license agreement through which Teknek had been granted access to the vendor and customer data was revoked in May 2004 by Teknek Electronics. The bankruptcy court found this argument implausible given the fact that Hamilton was an interest holder and officer of both Teknek and Teknek Electronics.

Hamilton contends that the bankruptcy court erred in finding that she had possession of or control over the vendor and customer information. All of the arguments she offers go wrong from the outset, however, because Hamilton misapprehends the parties' respective burdens of proof. Hamilton correctly asserts that the initial burden is on SDI to show by clear and convincing evidence that a court order was in effect, that Hamilton knew of the order, and that she failed to comply with the order. *In re Kademoglou*, 199 B.R. 35, 36 (N.D. Ill. 1996) ("To support a finding of civil contempt, the moving party must establish through clear and convincing evidence that an order of

---

[5] The court notes, however, that despite its refusal to address the issue in Hamilton's contempt motion, the bankruptcy court eventually ruled on the issue of personal jurisdiction in a related adversary proceeding that SDI brought against Hamilton. There, too, Hamilton asserted that the bankruptcy court lacked personal jurisdiction over her. After conducting a lengthy analysis, the court ruled to the contrary. *See In re Teknek, LLC*, Nos. 05 B 27545 & No. 06 A 00412, 2006 WL 3422263, at *16 (Bankr. N.D. Ill. Oct. 16, 2006). Hamilton has not sought to challenge the bankruptcy court's ruling in connection with this appeal. Indeed, in her motion to reconsider, Hamilton expressly argued that if the bankruptcy court were to find that it lacked personal jurisdiction over her for purposes of the adversary proceeding, the same ruling should apply for purposes of the contempt order. *See* Mot. Recons. at 4.

the Court was in effect, the defendant knew of the order, and the defendant failed to comply with the order."); *S.E.C. v. Custable*, No. 94 C 3755, 1999 WL 92260, at *2 (N.D. Ill. Feb. 11, 1999) ("The initial burden in a civil contempt proceeding rests with the complainant, who must prove by clear and convincing evidence that the alleged contemnor has knowingly violated an outstanding court order.") (citing *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992)). Hamilton fails to acknowledge, however, that once the moving party has made its initial showing, the burden shifts to the alleged contemnor to explain her failure to comply with the court's order. *Id.* ("After the complainant makes this *prima facie* showing, the burden of production shifts to the alleged contemnor, who may defend his violation by establishing inability to comply.") (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)).[6]

Here, SDI has unquestionably carried its burden: Hamilton does not deny that the bankruptcy court issued the order requiring her to produce the vendor information; nor does she deny that she was aware of the order or that she failed to comply with it. Hamilton, by contrast, has done little, if anything, to explain her failure to comply. On the contrary, Hamilton simply claims—repeatedly—that the bankruptcy court erred by disregarding her contention that she lacked possession of or control over the information in question. This contention is unavailing for at least

---

[6] On this point, the court notes that the bankruptcy court's articulation of the standard makes no reference to burden-shifting. As formulated by the bankruptcy court, the standard was whether SDI can show "by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *In re Teknek, LLC*, No. 05 B 27545, slip op. at 5 (Bankr. N.D. Ill. June 30, 2006) (quoting *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1236 (9th Cir. 1999)). The bankruptcy court did not explicitly place any burden on Hamilton to explain her failure to comply with the order. To avoid any confusion, the court emphasizes that, for the reasons discussed more fully *infra*, the bankruptcy court's ruling holding Hamilton in contempt warrants affirmance regardless of any burden-shifting placing the onus specifically on Hamilton to account for her noncompliance with the subpoena.

-12-

two reasons. First, Hamilton explicitly asserted that she lacked possession of the information only in her motion to reconsider the bankruptcy court's contempt order. Prior to that time, Hamilton had made only the considerably more modest claim that SDI had failed to establish that she had possession of the information. Secondly, and more importantly, even if Hamilton had unequivocally denied possession of the information all along, she still would have failed to provide an adequate explanation of her failure to comply with the subpoena. Courts have repeatedly held that a party's bare assertion of its inability to comply with a court's order is insufficient to carry its burden of explaining noncompliance. As one court recently explained:

> While an alleged contemnor in a civil contempt proceeding may assert a defense of inability to comply, the contemnor must produce detailed evidence as to why he cannot comply. Further, the contemnor must show that he has made reasonable good faith efforts to comply. Here, Respondent . . . has merely asserted that the summonsed documents are not in his possession, custody, and/or control. This is insufficient. . . . Respondent has produced no evidence showing he never received [the disputed] statements for the time periods requested. Even assuming Respondent no longer has the statements issued to him by his bank, he has provided no evidence of reasonable, good-faith efforts made to obtain these statements . . . . A blanket assertion that one lacks possession or control of the summonsed documents is not sufficient to meet the burden of producing evidence to show all reasonable efforts have been made to comply with the order.

*United States v. Berlin*, No. 06-0170 (TFH), 2006 WL 3069541, at *2 (D.D.C. Sept. 14, 2006); *see also Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 740 (11th Cir. 2006) ("Once the movant makes a prima facie showing of a violation, the burden shifts to the alleged contemnor to produce detailed evidence specifically explaining why he cannot comply. The burden of production is not satisfied by a mere assertion of inability.") (internal citations omitted); *Chicago Truck Drivers v. Brotherhood Labor Leasing*, 207 F.3d 500, 506 (8th Cir. 2000) ("[A] mere assertion of present inability is insufficient to avoid a civil contempt finding. Rather, alleged contemnors defending on the ground of inability must establish: (1) that they were unable to comply, explaining why

categorically and in detail; (2) that their inability to comply was not self-induced; and (3) that they made in good faith all reasonable efforts to comply.") (internal citations and quotation marks omitted); *See, e.g.*, *In re Kademoglou*, 199 B.R. at 36 ("[The alleged contemnor's] burden can only be surmounted by com[ing] forward with evidence in support of it. A mere assertion of inability will not suffice to show the factual impossibility of compliance. Indeed, surmounting the burden requires the alleged contemnor to show, categorically and in detail why she was unable to comply with the Court's previous order.") (internal citations and quotation marks omitted).

Just so here. Hamilton has simply stated that she does not have access to the disputed information. To be sure, she has cited the expiration of the license agreement as the reason why she has failed to produce the documents. But she has not explained in any detail what other efforts she has made to obtain the information or even why, as a part owner of other Teknek entities, she is not able to access the information in the absence of the license agreement. Hence, the bankruptcy court did not err in failing to attribute significance to Hamilton's repeated assertions that she does not possess the information in question.

Hamilton also argues that the bankruptcy court erred because the record is devoid of any evidence that she had (or currently has) control over the information in question. This is simply incorrect. First, SDI points to testimony from Hamilton's Rule 2004 examination in which she admitted that she was able to access Teknek customer and vendor information from a computer system in Scotland. The relevant part of the transcript is as follows:

> Q: And what I'd like to know is did you have access to records in June of 2004 that would reflect who the customers were of Teknek America, LLC?
> A: I had access to the records, yes.
> Q: How did you have access to the records?
> A: I have access to the records through the computer system.

>     . . . .
>     Q:     Through your computer in Scotland did you have access to the records of all
>            the Teknek-related companies?
>     A:     Yes.

Dep. Sheila Hamilton, 42:14-21; 43:9-12.

Although Hamilton is here asked about her access to records in 2004, her answer, notably, is formulated in the present tense, indicating that her access had not been terminated. Moreover, although she was initially asked specifically about the customers of Teknek America, LLC, the subsequent questioning makes clear that Hamilton has access to the records of all of the Teknek companies.

A second basis for the bankruptcy court's order is the fact that Hamilton is a manager and part owner of both Teknek and the entity from which Teknek licensed the vendor and customer information. As part owner of the entity licensing the vendor information to Teknek, the bankruptcy court reasonably concluded that Hamilton continues to have access to the information in question. Against this, Hamilton claims that while the record shows that she was "at one time" an owner of Teknek Electronics (from which Teknek originally licensed the customer information), that entity is now insolvent. As a result, there is no evidence concerning which Teknek entity might currently possess the vendor and customer information and no evidence as to whether Hamilton has any control over that entity. She further argues that the bankruptcy court's factual findings on this point are deficient because the court never identified the particular successor entity to Teknek Electronics that is alleged currently to possess the disputed information and of which Hamilton is alleged to be part owner.

The court is not convinced. The fact that the bankruptcy court refrained from identifying the

-15-

particular Teknek entity currently in possession of the vendor information does not render the bankruptcy court's findings of fact deficient.[7] Indeed, given the byzantine and ever-changing web of Teknek entities that Hamilton and her partner have created, any entity the bankruptcy court might have singled out could simply have been renamed or could have relinquished control of the vendor information to another Teknek entity. For example, Teknek LLC originally licensed the customer list from Teknek Electronics. Later, however, Teknek Electronics became insolvent and sold its

---

[7] Hamilton attempts to analogize the bankruptcy court's opinion to other cases "in which a lower court failed to make sufficient findings of fact when reaching its conclusion." Appellant's Br. at 12. The only purportedly analogous case she cites, however, is *Denofre v. Transp. Ins. Rating Bureau*, 532 F.2d 43 (7th Cir. 1976), a Title VII employment discrimination action that was tried before a judge. In *Denofre*, the court granted the defendant's motion to dismiss after the close of the evidence pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. *Id.* at 44. The Seventh Circuit explained that a district court granting a motion to dismiss under Rule 41 was required to "make findings as provided in Rule 52(a)," and that Rule 52(a) in turn required the district court to "find the facts specially and state separately its conclusions of law thereon." *Id.* at 44-45. The district court had offered only a brief oral statement at the close of evidence to explain the basis of its decision to grant the motion to dismiss. The Seventh Circuit found that the district court's remarks were not sufficient to meet the requirements of Rules 41(b) and 52(a).

    It is difficult to discern any analogy between *Denofre* and the present case. *Denofre* did not involve a contempt order and did not arise in the bankruptcy context. Although she does not say so explicitly, Hamilton's argument may ultimately center on Rule 52. Specifically, her contention may be that, like the decision in *Denofre*, the bankruptcy court's decision here failed to comply with Rule 52(a) because it neglected to make a specific factual finding with respect to the Teknek entity currently in control of the vendor list. To the extent that her argument may be so understood, however, it fails. For one thing, the bankruptcy court here, unlike the court in *Denofre*, was not required to make specific factual findings under Rule 52. This is because while Rule 52 requires factual findings in cases (such as *Denofre*) involving a "trial without a jury," Fed. R. Civ. P. 52(c), Rule 52(a) provides that findings of fact are "unnecessary on decisions of motions," Fed. R. Civ. P. 52(a), such as the bankruptcy court's decision here. Moreover, even if specific factual findings were required here, the court finds that the bankruptcy court's opinions were sufficiently well-reasoned and specific to allow informed appellate review. *See, e.g.*, *United States v. Vetco, Inc.*, 691 F.2d 1281, 1285 (9th Cir. 1981) ("The function of findings and conclusions is to permit informed appellate review.").

customer list to Teknek Holdings (of which Hamilton was also part owner); Teknek Holdings later licensed the information to Teknek, America, LLC; Teknek America, LLC was later renamed Kenham, LLC. *See* Hamilton Dep. 150:24-151:21; Appellee's Br. at 6. Regardless of whether the specific Teknek entity currently in possession of the disputed information can be identified, the ultimate question is whether any Teknek entity of which Hamilton is either an interest-holder or officer is currently in possession of the information. On the latter question, Hamilton's position is simply unconvincing. She nowhere denies that she is indeed either an owner and/or officer of the entity that currently possesses the information. To be sure, Hamilton makes the different, somewhat more cryptic claim that she does not *now* have control over the documents in question. As has already been explained, however, such bald assertions are insufficient to explain a party's failure to comply with a subpoena. If no Teknek entity currently controls the information in question, or if a Teknek entity controls the information but Hamilton lacks any control or authority over that entity, it is unclear why she has yet to offer specific, concrete evidence to that effect. Absent a more forthcoming explanation by Hamilton, the court cannot say that the bankruptcy court committed clear error in finding that Hamilton possesses control over the information in question.

As a final matter, the court notes that the case authority Hamilton attempts to marshal in her support is inapposite and indeed serves even further to undermine her position. Hamilton cites only two cases—the most recent of which dates from 1950—and both cases are easily distinguishable from Hamilton's. *In re Charlotte Textile Co.*, 94 F. Supp. 872 (S.D.N.Y. 1950), involved a subpoena by a bankruptcy referee requiring an attorney to produce certain books and records. *Id.* at 873. The district court had authorized the referee to thoroughly investigate the bankrupt's affairs. *Id.* The referee subpoenaed the bankrupt's attorney to produce certain books and records. Although

the attorney claimed that he did not have possession of the records, *and although no one questioned the truth of the attorney's assertion*, the referee nevertheless continued to seek enforcement of the subpoena. *Id.* The district court held that the referee acted unreasonably in refusing to set aside the order. Here, in contrast to *Charlotte Textile*, both SDI and the bankruptcy court legitimately question whether Hamilton is able to produce Teknek's vendor and customer information.

Also wide of the mark is Hamilton's other case, *In re Gordon & Gelberg*, 69 F.2d 81 (2d Cir. 1934). *In re Gordon* involved a district court's order that two corporate officers turn over their bankrupt corporation's accounting records. *Id.* at 82. The officers claimed that they did not have the documents in their possession. *Id.* The referee heard testimony from the officers, their bookkeeper, foreman, and several other employees, all of whom substantiated the officers' claim. Despite the uncontradicted evidence supporting their position, the district court judge simply did not believe the officers' story, which he took to be of the "cock and bull variety." *Id.* at 83. The Second Circuit reversed the court's decision, stating that the referee was in a better position than the district court to judge the credibility of the testimony. *Id.* As in *Charlotte Textile*, a key feature of in *In re Gordon* is the absence any evidence whatsoever to call into doubt the contention of the party claiming to have no possession of the subpoenaed information. Here, by contrast, given Hamilton's deposition testimony and her relationship to the various Teknek entities at issue, the bankruptcy court reasonably viewed with skepticism Hamilton's conclusory claim that she has no access to the vendor or customer data.

## CONCLUSION

For the reasons stated above, the bankruptcy court's ruling is affirmed.

ENTER:



\_\_/s/_____
Joan B. Gottschall
United States District Judge


Dated: February 9, 2007